J. T. FARGASON & SONS, INC., et al. *v.* CULLANDER MACHINERY CO., INC.

No. 39668      June 13, 1955      80 So. 2d 757

*Stovall Lowrey, Chas. L. Sullivan, Maynard, Fitzgerald & Maynard,* Clarksdale, for appellant, *John T. Fargason & Sons, Inc.*

. *Stovall Lowrey, Chas. L. Sullivan, Maynard, Fitzgerald & Maynard,* Clarksdale, for appellants, *C. A. Spragins* and *William W. Spragins.*

*Roberson, Luckett & Roberson,* Clarksdale, for appellee, on appeal of *J. T. Fargason & Sons, Inc.*

624

*Roberson, Luckett & Roberson,* Clarksdale, for appellee, on appeal of C. A. Spragins and William W. Spragins.

APPELLANT, J. T. FARGASON & SONS, INC., IN REPLY.

APPELLANTS, C. A. SPRAGINS AND WILLIAM W. SPRAGINS, IN REPLY.

McGEHEE, C. J.

This is a suit to recover the sum of $28,661.50 as damages for the complete loss of a rice crop which was planted about June 1, 1952, on 197 acres of land in Coahoma County, and which rice crop consisted of a good stand thereof and was about 3 inches high at the time it died, because of the alleged failure of a well pump, motor and other equipment installed by the defendant, the appellee Cullander Machinery Company, Inc., of Belzoni, Mississippi, to continue to produce a sufficient quantity of water for the proper irrigation of the rice field.

The original declaration was predicated upon the alleged defective condition of the motor which failed to run continuously so as to produce a minimum of 2,000 gallons of water per minute necessary for the proper irrigation of the rice field, as stipulated for under a written contract between the plaintiff J. T. Fargason & Sons, Inc., and the defendant Cullander Machinery Company, Inc. An amended declaration was filed which alleged that the defendant was liable for the loss of the rice crop on the ground that the irrigation equipment was inadequate to serve the purpose for which it had been purchased and installed in that it was of insufficient capacity to continuously produce the quantity of water stipulated for and needed to sustain the life of the young rice, which died on or about June 10, 1952. It is undisputed that the equipment would produce 2,000 gallons of water per minute while in operation, but that the motor kept stopping and failing to produce any water at all until adjusted again.

It appears from the proof that the appellants C. A. Spragins and Wm. W. Spragins had agreed with the appellant, J. T. Fargason & Sons, Inc., the owner of the land, to perform the necessary labor in connection with the planting, irrigation, production and harvesting of the rice crop for three-fourths of the yield from the rice crop

on the said 197 acres of land in consideration of their said co-plaintiff furnishing the land, rice seed, and the irrigation equipment suitable for the production of the rice crop and receiving the other one-fourth of the value of the yield thereof.

On motion of the defendant, Cullander Machinery Company, Inc., the names of the Sparginses were stricken from the declaration and amended declaration on the ground that they were not parties to the contract sued on and alleged to have been breached.

It had been alleged by the plaintiffs that the corporate plaintiff and the Sparginses had entered into a joint undertaking for the production of the rice crop, and consequently the question arose as to whether the relation of the said plaintiffs *inter se* was merely that of landlord and tenant instead of partners or joint venturers. At any rate, the motion on the ground of misjoinder of plaintiffs was sustained by the trial court, and at the conclusion of the testimony offered by the plaintiffs there was a directed verdict in favor of the defendant as to the remaining plaintiff J. T. Fargason & Sons, Inc., on the ground that the defendant, not being the manufacturer of the pump, motor and other irrigation equipment, owed only the duty to the other contracting party to replace any part of the equipment which proved to be defective, under the terms of the contract, and that there was no implied warranty on the part of the defendant that the equipment was of sufficient capacity to serve the purpose for which the same had been purchased. All of the plaintiffs join in this appeal, on the basis of the contract and the oral proof offered in evidence by the plaintiffs, since the defendant offered no testimony due to the fact that the trial court had sustained the motion to exclude the remaining plaintiff's evidence and had directed the jury to find for the defendant.

The written contract, made Exhibit "A" to the declaration and amended declaration, was signed by the plain-

tiff J. T. Fargason & Sons, Inc., and by the defendant Cullander Machinery Company, Inc., by J. T. Fleming, Jr., agent. It provided, among other things, the following: "Subject to the conditions printed on the back of this sheet, we offer the following articles at the prices set opposite." The offer gave a choice to the purchaser of either of three types of equipment, namely:

"Item No. 1. One Figure 6920 Fairbanks oil lubricated turbine pump consisting of 60' setting of 8" water column. 2½" oil tubing 17/16" shafting, 10' discharge, 10 suction set in customers suitable strata to produce 2000 G. P. M. or more. Belted head and V Belts furnished if power unit is used.

"Item No. 2. Cullander Machinery Co., Inc., agrees to install pumps in well drilled by them to a maximum depth of 110' with screen placed in customers suitable strata to produce the above mentioned amount of water.

"Item No. 3. Cullander Machinery co., Inc., agrees to furnish customers choice of power units at prices listed below.

50 H. P. Electric Motor with switches & Starter ($5,-982.70) 60 H. P. Electric Motor with switchex Reduced Voltage ($6,619.50), Model B 427 Continental Red Seal Engine on Butane or Natural Gas ($6,391.60).

Plus 2% Sales tax."

On the reverse side of the signed agreement containing the above provisions there appears the following pertinent stipulations:

"* * * * this proposal is made with the distinct understanding that we are not to be held liable for damages of any character whatsoever, consequential upon delays due to defective materials, delays in shipments or in erecting * * * .

"* * * that there is no agreements or promise relating to this contract or transaction not embodied herein and in the notes evidencing the unpaid purchase money."

Without detailing the testimony offered by the plaintiffs, a summary thereof would show that no complaint is made of the well drilled by the defendant, nor of the pump which it installed. The complaint as established by the proof is that the plaintiffs were wholly inexperienced prior to the year 1952 in the matter of growing rice, and had no knowledge in regard to the proper irrigation of rice and as to the type of equipment that should be used; that they advised the defendant of these facts, and relied upon the expert knowledge which the defendant allegedly claimed to possess as to the proper well and an adequate and proper equipment to properly irrigate the rice area in question; that the installation did not perform satisfactorily from the time of its completion on April 26, 1952, and required numerous adjustments and repairs by the defendant, but that by June 1, 1952, a sufficient amount of water was on the rice area to permit the planting of the rice, and that immediately thereafter the installation failed and did not operate satisfactorily or continuously for any period of time during the next ten days, and that by June 10, 1952, the rice crop, planted about June 1, 1952, had become a total loss.

The proof further disclosed that the defendant responded to calls from the plaintiffs to come and undertake to remedy whatever defect existed in the equipment, and that on each occasion the defendant assured the plaintiffs that they had remedied the defect by proper adjustment of the motor and that it was then ready to perform properly thereafter. Thus it would appear that if the defect was either in the materials or workmanship, the same was a latent defect, since the plaintiffs testified, in effect, that they could not see anything wrong with the motor insofar as defects in materials or workmanship were concerned, and they expressly testified that they had no complaint as to either the well or the pump.

The contract did not expressly impose upon the defendant the duty to make repairs, but they evidently sought without success to determine the latent trouble with the motor because of the statement contained in the contract which contemplated that the equipment was to be suitable to produce 2,000 gallons of water per minute and was not doing so continuously.

It does not help the cause of the plaintiffs that the defendant may have been negligent in not concluding that it could not remedy whatever defect existed and in assuring the plaintiffs on each occasion of their visits to make repairs that the equipment was then, following such attempts to repair, ready to produce the necessary water, and that relying upon such assurances the plaintiffs delayed their request for a replacement of the motor, since the suit is not based on any alleged negligence, but is one based on an alleged breach of the written contract.

The plaintiffs' theory of liability under the amended declaration that, without regard to whether or not the motor was defective in materials or workmanship, it was of insufficient capacity to produce the quantity of water admittedly necessary, is in conflict with the provisions of the written contract "that there is no agreement or promise relating to this contract or transaction not embodied herein," where the plaintiffs rely upon an implied warranty of the retail dealer that the equipment to be installed by it would be suitable for the purpose for which the same was purchased. Except for the written contract, the proof as to the knowledge of the dealer as to the purpose for which the equipment was to be used and as to the known reliance of the plaintiffs upon the oral representations testified about in regard to its suitability for such purpose may have been sufficient to take the case to the jury on the issue of whether the failure of the equipment was due to a latent defect in the motor or its mere lack of capacity to properly irrigate the rice field. However, the proof is not clear as to which of these

factors was the proximate cause of the loss sustained. It appears that it would have been mere conjecture on the part of the jury in deciding in favor of either one of these theories in preference to the other. But under the terms of the written contract where it is shown that the seller was not the manufacturer of the product sold and that the same was purchased by the dealer from reputable manufacturers, we do not think that the trial court would have been justified in submitting the case to the jury on an implied warranty as to the suitability of the equipment for the purpose for which it was purchased, and on the ground that the overloading of the motor was what caused it to fail to function.

The proof discloses that the defendant replaced the motor with one selected by the plaintiff J. T. Fargason & Sons, Inc., when finally requested to do so, and allowed the said purchaser a full credit for the purchase price of the original motor on the one by which it was replaced.

Under the numerous authorities cited by the appellee, we do not think that the trial court committed error in sustaining its motion or plea of misjoinder of plaintiffs since the Spraginses were not parties to the contract sued on. Any warranty therein contained was not made to them. They may have been incidental beneficiaries of the contract, but that is not sufficient in the instant case.

██ █ The briefs of the respective parties are excellent, and under the authorities cited by the appellants the J. T. Fargason & Sons, Inc., would probably have been entitled to have had the case submitted to the jury under the facts and circumstances testified to, except for the terms of the written contract which, in our opinion, under the rule in this state precludes the purchaser from recovering on either the express warranty, which the proof in this case fails to show was not complied with, or under the alleged implied warranty as to the

capacity of the equipment to serve the purpose for which the same was purchased.

In the recent case of Watts v. Adair, 211 Miss. 777, 52 So. 2d 649, this Court said: "Regardless of the modern trends, recognized in other jurisdictions, there is in this State no implied warranty of fitness or quality of articles where there has been an executed sale by one not a manufacturer. Christenberry v. Saik, 191 Miss. 148, 2 So. 2d 142; Gerard Motor Co. v. McEachern, 150 Miss. 437, 116 So. 816; Bellville Supply Co. v. Dacey, 141 Miss. 569, 106 So. 818; Industrial Finance Corp. v. Wheat, 142 Miss. 536, 107 So. 382; Orgill Brothers & Co. v. Everett, 138 Miss. 213, 103 So. 82; 46 Am. Jur., Sales, Sections 337, 339."

The appellants cite the case of Lumberman's Supply Co. v. Poplarville Sawmill Co., 117 Miss. 274, 78 So. 157, and they contend that the article therein complained of was not sold by the manufacturer, the same as in the case at bar, but we find that in the later case of P. D. Bellville Supply Co. v. Dacey, 141 Miss. 569, 106 So. 818, cited by the appellants, it was said: "While it does not appear from the record of the case of Lumberman's Supply Co. v. Poplarville Sawmill Co., 117 Miss. 274, 78 So. 157, relied on by the appellee, an examination of the original record therein discloses that the belt therein involved was purchased from a manufacturer, to be thereafter manufactured and delivered."

The final judgment in favor of the defendant here appealed from must therefore be affirmed.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.