**PAUL O'LEARY LUMBER CORPORATION, Plaintiff,**

v.

**MILL EQUIPMENT, INC., and Wilco Machine Works, Inc., Defendants.**

**Civ. A. No. 1474.**

United States District Court,
S. D. Mississippi, E. D.

July 8, 1970.

On Motion to Amend Aug. 7, 1971.

E. L. Snow, Meridian, Miss., for plaintiff.

R. B. Deen, Jr., Meridian, Miss., for Wilco Machine Works, Inc.

William B. Compton, Meridian, Miss., for Mill Equipment, Inc.

WILLIAM HAROLD COX, District Judge.

After extensive negotiations between the parties (manufacturer, seller and buyer), on September 29, 1964, Paul O'Leary Lumber Corporation (called buyer) purchased from Wilco Machine Works, Inc. (called seller) some sawmill equipment which the seller agreed to and did install on buyer's plant site near Meridian. The time sales price for this equipment was $111,614.25, evidenced by a promissory note and secured by a title retention or conditional sales contract. On September 1, 1965, the indebtedness was reduced to $81,984.25, evidenced by a promissory note and secured by a chattel mortgage on the five pieces of sawmill equipment. The principal item of equipment is described as a No. 2 selectric beaver, complete with attachments, which cost $48,850. This piece of equipment was new to the sawmill industry and was manufactured by Mill Equipment, Inc. (called manufacturer).

This controversy stems solely from the late delivery and unsatisfactory perform-

ance of the beaver machine, which the seller agreed to deliver and install on or about January 15, 1965. The buyer has sued the seller and the manufacturer for damages claimed to have accrued to it under an implied warranty of fitness of this equipment by reason of the failure of the selectric beaver to perform as represented and for damages for delay in installing it. For various reasons, the manufacturer was unable to deliver the equipment to the seller for installation as agreed. This piece of beaver equipment was purchased to perform two operations simultaneously: It operated as a chipper of $\frac{5}{8}$ chips and was expected to construct 2 $\times$ 4 pieces of merchantable lumber. The knives on this piece of equipment were not made of hard enough steel, or were not properly placed on and securely fastened to the machine for effective and efficient operation, and continuously caused trouble by shutdowns and for the replacement of knives.

The manufacturer denies any responsibility to the buyer for this sale in which it did not finally participate as seller directly with the buyer. This machine was new and incorporated some novel innovations in the sawmill industry and carried an appeal to the failing business of the buyer. The manufacturer challenges the jurisdiction of this court under the Mississippi longarm statute and denies the existence of the requisite minimal contacts for doing business in Mississippi.

· The seller interposes many defenses to this suit, but basically contends that it is not liable for the damages claimed, or any substantial part thereof. It contends that it was known not to be the manufacturer of this equipment, and that it made no implied warranty as to fitness of such equipment, and that it made express warranties with this sale as to material and workmanship only, which excluded all implied warranties thereasto. It counter sued the buyer for the unpaid balance due on its purchase contract and for additional supplies sold on open account. The seller likewise asserted its demand against the manufacturer for any liability it may have incurred to the buyer solely by reason of the manufacturer's fault.

The court heard extensive testimony and received voluminous evidence from the parties on these issues without the intervention of a jury. This case is fraught with myriad complications of facts and governing principles of law. In limine is presented the question of the jurisdiction of this court of this Seattle, Washington manufacturer. This foreign corporation never qualified to do business in Mississippi, and is not subject to suit here unless it was doing business in Mississippi as provided in the act. The testimony in this case shows to the satisfaction of this court that the manufacturer and the seller made it their business to interest this buyer in this equipment, and to do everything within their power, as they did, to induce the purchase of said equipment. The manufacturer initiated the drawings and plans for the installation of the plant and sent their representatives into Mississippi to counsel and supervise such installation, and to make every effort to meet all complaints and make said equipment operate satisfactorily to stimulate public acceptance of its new product. Those facts and circumstances and reasonable inference deducible from them lead this court to the firm conclusion that the manufacturer has thus availed itself of more than the minimal contacts with Mississippi to satisfy all requirements of fair play under the due process clause of the federal constitution. It is the opinion of this court that it has jurisdiction in this case of this defendant as manufacturer, and its motion to dismiss will be overruled.

This transaction in its entirety must be viewed in context. This buyer was engaged and had been engaged in the business of selling lumber for several years in which it was losing money. It became interested in this beaver machine as a means of converting its losses into profits in a new business centered around the products produced by this newly devised and novel piece of equip-

ment manufactured in the extreme northwest area of the United States and primarily for use with spruce timber. Southern pine timber is substantially twice as hard as spruce and no doubt accounts for much of the difficulty encountered with the knives on this equipment. None of these parties are novices in the business world and that fact accounts for the extensive negotiations between the parties and the efforts expended by the buyer to see a like piece of equipment in operation on pine timber at the Del Connor Lumber Company plant in a northwestern state before buying said equipment. The facts in this case about its operation and the pictures of this machine show that it is an extremely complicated and very large piece of very expensive equipment. The buyer knew absolutely nothing about the equipment or its capabilities except what he was told by the seller and the manufacturer, and his inspection of such equipment in operation elsewhere foretold him nothing about his expectations and the experience which befell him with this equipment in its own plant here.

There are some basic and fundamental principles which lie at the threshold of this problem. It is a general principle of universal law that when negotiations result in a formalized contract, that such negotiations are merged into the contract. Here the negotiations were extensive and continuous and were unabated after the contract and effectually result in a modified performance of the formal contract by inducing action on the part of the buyer in response thereto, and such negotiations may not be disregarded as an integral part of the entire agreement between the parties. It is not within the province of any court to make a contract for the parties by judicial fiat, but it is very positively the responsibility of the court to examine and consider the contract of the parties in context for a proper determination of their intentions and rights and liabilities.

In this case, only the beaver piece of equipment never operated satisfactorily, and it could not be made to operate efficiently and effectively by anybody. Nevertheless, the buyer never sought a recision of the contract, but continued to operate and use said equipment at great expense and loss. The testimony shows that these knives on this equipment cost $138.00 apiece and that the buyer had returned $4,000 worth of them for reimbursement under the express warranty, and is being sued here for $14,000 worth of knives sold and used on this equipment during its relatively short operation.

Now, under these circumstances and conditions, the buyer seeks recovery of a wide range of alleged losses, such as loss of profits, loss on account of foreclosure, and loss on account of forced sale of land, in a fantastic aggregate amount. Nothing is sought or attempted on invitation of the court to be itemized for convincing consideration. Some applicable and controlling principles of law in this diversity case will be presently discussed toward a further disposition of it.

STATUTES OF LIMITATIONS

The defendants invoke the Mississippi three year statute of limitations as a defense to the complaint.[1] The plaintiff invokes the Mississippi one year statute of limitations applicable to deficiencies after foreclosure.[2] It will

1. Section 729 Mississippi Code 1942 provides: "Actions on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued, and not after."

2. Section 720 Mississippi Code 1942 provides: "In all cases, foreclosure of any deed of trust, mortgage, vendor's lien, or other instrument, no suit or action shall hereafter be commenced or brought upon any installment note, or series of notes of three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or personal, unless the same is commenced or brought within one year from the date of the

be observed that the Mississippi three year statute of limitations applies to oral and implied contracts, but that statute has no application where an implied warranty arises out of and accrues from a written contract between the parties as in the case at bar.[3] This contention of the defendants is untenable and is denied for the reason that the contract in suit is controlled by the six year statute of limitations and this suit was brought within that time.

■ The contention of the plaintiff with respect to the counterclaim of defendant (Wilco) being barred by the one year statute of limitations is likewise untenable and is denied. The replevin suit merely adjudged the right of the conditional vendor of such equipment to the immediate possession of it under the terms of the conditional sales or title retention contract under which it was sold. There has never been any kind of foreclosure under the terms and conditions of that instrument. Consequently, that statute of limitations has never been set in motion and had not expired prior to the filing of this counterclaim.

## THE IMPLIED WARRANTY

■ The jurisprudence of Mississippi, which is controlling in this diversity case, certainly recognizes the general rule that where a written contract expressly and clearly and unmistakably provides against the existence of expressly stated warranties, that no such implied warranties in such case may be shown without violating the parol evidence rule. That rule is not merely one of evidence but is one of substantive law. But that is not the case here because the contract in suit does not expressly negate the existence of an implied warranty as to the suitability and fitness of this beaver machine to do its work. This machine and its function was new to the industry and was new to the buyer. It was a very expensive piece of heavy equipment. The buyer became attracted to the machine by a news article in a trade magazine which to some extent described its function. The buyer was steadily losing money in its lumber business and seized upon the idea of buying this $48,850 piece of equipment which would make salable chips and 2 × 4 pieces of timber simultaneously. It seldom worked efficiently and effectively over any extended period of time and was not operating during working hours more than it operated. This No. 2 selectric beaver was one of five pieces of equipment with attachments thereto purchased by the buyer from the seller and represented more than one-half of the total purchase price of the five items. There was unmistakably shown by a preponderance of the evidence in this case that there was an implied warranty of fitness and suitability of this piece of equipment

foreclosure or sale of the property pledged as security for said note or notes. Provided, further, that no action shall be commenced or brought upon any such note or notes where such security has heretofore been foreclosed, except such action be brought or commenced within one year from the effective date of this Act."

3. Section 722 Mississippi Code 1942 formerly appeared as § 2292 Mississippi Code 1930, which provides that: "All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after." In City of Hattiesburg v. Cobb Bros. Const. Co., 174 Miss. 20, 163 So. 676, the court said that § 722 Mississippi Code 1942 (appearing as § 2292 Mississippi Code 1930) covered all written contracts. The court said: "Does it cover an implied contract provable entirely by writing? We think it does, and that this conclusion is supported by Washington v. Soria, 73 Miss. 665, 19 So. 485, 55 Am.St.Rep. 555; Cock v. Abernathy, 77 Miss. 872, 28 So. 18; Fowlkes v. Lea, 84 Miss. 509, 36 So. 1036, 68 L.R.A. 925, 2 Ann.Cas. 466; Masonic Benefit Association of Stringer Grand Lodge v. First State Bank of Columbus, 99 Miss. 610, 55 So. 408; Illinois Cent. R. Co. v. Jackson Oil & Refining Co., 111 Miss. 320, 71 So. 568; Blodgett v. Pearl River County, 134 Miss. 816, 98 So. 227; De Soto County v. Wood, 150 Miss. 432, 116 So. 738; Milam v. Paxton, 160 Miss. 562, 134 So. 171." Cf.: Prince v. Prince, 190 Miss. 309, 200 So. 126.

and that such implied warranty was breached. The knives on this beaver machine simply would not work and could not be made to work satisfactorily and acceptably. The seller in this case certainly had nothing to do with the design or the construction on this machine which was manufactured by Mill Equipment, Inc. The seller put a decal bearing its name and address at two places on this beaver machine, but did not represent the seller as the manufacturer and these decals fooled nobody in this case as to the identity of anybody else. But the seller in this case was not merely a seller of this machinery, but the seller in this case contracted to and did sell the machines and draw the plans and blueprints for the installation of the equipment, and installed the equipment and supervised its operation in an unsuccessful effort to make it produce. The general rule for excluding implied warranties has no application in such case.[4] The reference in the written contract between this seller and the buyer was inadequate in its provisions to entitle the seller to claim the benefit of a provision effectively excluding an implied warranty under the facts and circumstances in this case.[5] There was surely nothing in this sales contract between these parties which was called to the attention of this buyer to the effect that this seller was not liable on an implied warranty of fitness and suitability and effectiveness of this equipment to do the job which it was purchased to do. It is the finding and consequent opinion of this court under the facts and circumstances in this case that the seller is liable to the buyer for a breach of implied warranty on this beaver machine in the case at bar. There is no fact or circumstance in this case to show the court that the manufacturer assumed or had any duty to the buyer which it breached. The claim of the buyer as against the manufacturer is without merit and will be denied.

## DAMAGES

 The buyer kept and continued to use all the five items of machinery long after it was known that the equipment would not do and could not be made to do what it was purchased to do with any degree of efficiency and ef-

4. Dry Clime Lamp Corporation v. Edwards et al. (C.A.5) 389 F.2d 590, 594 says: "Cases holding that in an executed sale with no fraud there is no implied warranty by an independent sales agent who is not a manufacturer, e. g. J. T. Fargason & Sons, Inc. v. Cullander Machinery Co., 224 Miss. 620, 80 So.2d 757 (1955), have no application here. Consolidated's undertaking was not merely to sell components but also to engineer and design and furnish plans and specifications for the complete system of which the items sold would be parts. The implied warranty was to the quality of performance of the assembled system as designed and engineered by Consolidated.
　* * * The measure of Gulf's damage for breach of warranty is the difference between the purchase price of what was bought and the value thereof, plus special damages suffered as a natural and direct result of the breach of warranty. Morrow v. Barron Motor Co., 229 Miss. 51, 90 So.2d 20 (1956). A proper calculation of damages will include computing the cost of the components purchased from Consolidated and elsewhere, instal-lation charges, delivery costs, and similar items, many of which were properly proved in the trial. From this must be deducted the fair market value. The testimony of Gulf was that the system has no value, and defendants produced no evidence to the contrary."

5. Grey v. Hayes-Sammons Chemical Co., (C.A.5) 310 F.2d 291, 300 says: "Mississippi recognizes the validity of a non-warranty clause. Stribling Bros. Machinery Co. v. Girod Co., 1960, 239 Miss. 488, 124 So.2d 289; Industrial Finance Corp. v. Wheat, 1926, 142 Miss. 536, 107 So. 382. However, the disclaimer must clearly and unequivocally describe the warranties it disclaims, and uncertainties in the language used must be resolved against the disclaimer. Otherwise the seller would have an unfair advantage from his tactically superior position of being able to print any notice he wishes on his containers. See 1 Fruman and Friedman, Products Liability § 16.04[2][e] (1961); Prosser, Warranty of Merchantable Quality, 27 Minn.L.Rev. 117, 160 (1942)."

fectiveness. The machine was promised to be delivered and installed on or about January 15, 1965. It was not delivered until approximately five months after that date. The buyer was obliged to and did purchase and have on hand available for his operations timber for processing through the beaver machine which deteriorated on the lot. This timber had to be cut and sold as chips at approximately ¼ of the amount which would have been realized from 2 × 4 lumber. There is nothing in this record before the court to show in any cogent and convincing manner as to the actual loss experienced by this buyer from this source. This was a completely new business for this plaintiff and there is nothing in this record before the court to show any convincing proof as to the loss of profits from this business occasioned by the unsatisfactory operation of this equipment. It was certainly due as actual damages a judgment for the full amount of its actual losses and out of pocket expense occasioned by the breach of implied warranty on this equipment. But the plaintiff has simply not shown any such losses in such a manner as to enable this court to calculate the amount thereof with any degree of accuracy or dependability. This plant was shut down on numerous occasions and doubtless sustained much loss of time and money on such occasions, but there is nothing in this record to assist this court in making a determination thereof simply from the records of this company. It is apparent to the court under the facts and circumstances in this case and from reasonable inferences that the buyer has sustained terrific losses and damages from the breach of the seller's implied warranty of suitability and fitness of this beaver machine. The buyer at no time sought to rescind the contract or return the machine with the other machines bought with it, but continued to try to make the beaver machine work.[6] All of these five items of equipment were not purchased by the seller from this manufacturer. This entire lot of machinery and equipment as represented when sold was worth $111,614.25. Forty-eight thousand and eight hundred fifty dollars of said amount represented the sale price and sale value of the No. 2 selectric beaver, complete with attachments as and when sold. There is no positive and direct testimony in this record as to the value of said equipment as delivered and sold. It was of no value to the buyer but its fair and reasonable market value in the opinion of the court under all of the facts and circumstances and reasonable inferences was actually $18,850. The other elements of damages claimed and sought to be recovered by the plaintiff are not allowable and the claim thereto is untenable and is denied. It is accordingly the opinion of this court that the buyer is entitled to a judgment against the seller for the difference in value of the beaver machine as sold and as delivered in the amount of $30,000, plus $1,475.23 paid King for work on the

---

6. In J. B. Colt v. Mazingo, 141 Miss. 402, 106 So. 533, the court held that where a warranty is breached as to suitability and fitness of equipment and where the buyer discovers such defect and continues to use it thereafter, that he is liable only for the difference in value of the machine as represented and its actual value as revealed by its operation.

In some of the Mississippi cases dealing with this subject, it is said that where personal property is sold under a *guaranty* as to its condition or performance, that the buyer may prove the difference in value of the equipment as guaranteed and the equipment as sold and delivered. Christian & Brough Co. v. Goodman & Garrett, 132 Miss. 786, 96 So. 692.

Generally, the measure of damages in such a case is the difference in value of the property as warranted, and the actual value in its defective condition, but this measure of damages is not exclusive "and the buyer may also be entitled to recover such special damages as may have been suffered as a natural and direct result of the breach of warranty." Morrow v. Barron Motor Co., 229 Miss 51, 90 So.2d 20. It may be noted that the contract in that case undertook to warrant the material and workmanship for a limited time and to exclude all other warranties, express and implied.

machine, plus nominal damages in the amount of $5,000 for delay in shipping the equipment and installing it as agreed; plus estimated nominal damages for losses sustained during shutdown time in the amount of $10,000, aggregating the sum of $46,475.23.

 The seller is entitled to a judgment here on the note and account in suit in the sum of $95,717.70. No attorneys fee is allowed on the note in suit for the reasons that substantially all of the seller's expense in this case was incurred in the defense of this suit and not in the suit on the note; and that the seller, as holder of said note, first breached its contract with the buyer and his right to maintain the suit on such contract under such circumstances at all is cast in serious doubt in this state. The buyer as plaintiff will be entitled to credit on the note in suit for the value of the machines repossessed in the amount of $63,054.25, plus the amount of its award in damages, aggregating $46,-475.23. Thus the plaintiff will have satisfied the claim of defendant (Wilco) in its entirety and shall recover over from said defendant in the sum of $13,-811.78. Most of such damages incurred and awarded were occasioned solely by the manufacturer of the beaver machine under the undisputed facts in this case and Wilco is entitled to a judgment against the defendant, Mill Equipment, Inc., for the amount of such losses contained in said award, which must be adjusted for equipment purchased and installed by Wilco from suppliers other than Mill Equipment, Inc. This opinion sufficiently states the findings and conclusions to comply with all of the requirements of Civil Rule 52(a).

At the conclusion of all of the testimony and evidence adduced by the parties, the defendants made separate motions for judgments on the record, and the court being of the opinion that the motion of Wilco is without merit, it will be denied, but that the motion of Mill Equipment, Inc. is well taken and will be sustained.

A judgment accordingly may be presented for entry.

## ON MOTION TO AMEND

 Mill Equipment, Inc. has filed an eight paragraph motion to amend the judgment in this case. The substance of the motion is that this defendant seeks another chance to re-try its controversy with Wilco Machine Works, Inc. There was never a suggestion from anybody as to the necessity or the desirability of making two cases out of this suit because of the existence of the counter claim of Wilco against Mill Equipment. There was, indeed, a paucity of evidence presented to the court bearing upon the controversy between the defendants. In fact, Mill Equipment did not seem to this court to take Wilco's claim with any degree of seriousness. This court thus had presented to it a controversy which the court was obliged to resolve largely by circumstances and inferences from which the court concluded that Mill Equipment was liable to Wilco in the manner and to the extent indicated by the opinion and judgment. These defendants had no joint and several liability to this plaintiff. The court recessed a lengthy hearing at Meridian, and reconvened at Meridian at a later time, and took additional testimony and struggled with this record from copious notes for several days in an effort to make a just and proper disposition of this controversy between these three parties. A litigant is simply not entitled to hold back any available evidence from the court and then ask to elicit the indulgence of the court to try the case anew to enable him to put in evidence then available, which he did not choose to use before resting his case. I was certainly not happy with a record of this kind made before me to be confronted with the difficult task of trying to resolve valuable property rights from such a record. But it is not the province of this court to supervise trial runs of cases to see whether or not they will be happy with the result, and then express surprise at the result and seek another chance

here. Such a chance is simply not available in this court and should not be available under such circumstances anywhere else. The motion of Mill Equipment, Inc, to amend the judgment will be denied.

The motion of the plaintiff to amend the findings and conclusions of the court, and for a new trial on the issue of damages alone is subject to the observations of the court just made. The plaintiff argued its case as it argued this motion with vigor and earnestness, but its deficiency inhered in its proof and in the application of asserted principles to its proof. Most of this lengthy hearing was devoted to proof of the plaintiff. The court was simply not impressed with or convinced by its proof that the plaintiff really knew or could show exactly what losses it sustained. It had records, but the records were not kept in such a way as to constitute convincing proof of much, if anything. The court was certainly convinced that the plaintiff had suffered disappointments, and losses, but the records did not show and no witness was able to testify exactly what those losses were. The testimony of the plaintiff on damages was not cogent or convincing. The book entries as made were not convincing as conclusions of the author of those entries just exactly and specifically what was meant or shown thereby. The building was constructed for this plant and is still on this property and presumably owned by and in the possession of the plaintiff. There was nothing in the evidence to show that this building is worth anything less than its cost, or that the plaintiff is entitled to any amount as damages against the defendant for the construction of this building. The findings and conclusions of this court were devised by the court at great pains, and in an effort to let the record show the ultimate facts and circumstances before the court from which inferences were drawn. A reexamination of the criticized findings and conclusions has failed to convince the court that they are in error, or would be improved upon by use of the suggested findings and conclusions proffered by the plaintiff, which are rejected.

The counter claim of the defendant (Wilco) contains an account with items aggregating $7,004.93, which were due and payable to it more than three years prior to the filing of its counter claim here. The plaintiff, as counter defendant, has pled the three year Mississippi statute of limitations as a bar thereto. The court gave no consideration to that point, and in such respect and to that extent was in error. The plaintiff's motion for a new trial will be overruled, but the judgment will be amended to disallow $7,004.93 of Wilco's claim against the plaintiff. That correction will result in the recovery by the plaintiff of the additional sum of $7,004.93 from Wilco in addition to the net amount previously awarded. Other relief requested by the plaintiff will be denied.

A judgment accordingly may be presented.